UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL SCHMITTLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16 CV 1647 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Daniel Schmittling brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Schmittling's severe physical and mental impairments, he was not disabled through his date last insured as he had the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### **I. Procedural History**

Schmittling filed an application for DIB on September 9, 2013, claiming that he became

unable to work on March 1, 2012,[1] because of bipolar disorder, manic depression, anxiety, panic disorder, kidney dysfunction, diabetes insipidus, and high blood pressure. (Tr. 212-14, 246.) Schmittling's claim was denied initially. (Tr. 112-16.) Following an administrative hearing, Schmittling's claim was denied in a written opinion by an ALJ, dated August 13, 2015. (Tr. 12-31.) Schmittling then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on August 24, 2016. (Tr. 10, 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Schmittling argues in his single claim that the ALJ erred in "making a mistake of fact." (Doc. 23 at 13.) Specifically, Schmittling contends that the ALJ considered a hearsay statement made by Schmittling to his counselor as fact of the information stated by Plaintiff. *Id.*

## II. The ALJ's Determination

The ALJ found that Schmittling last met the insured status requirements of the Social Security Act on December 31, 2014, and did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2012, through his date last insured of December 31, 2014. (Tr. 17.)

In addition, the ALJ concluded that Schmittling had the following severe impairments through the date last insured: kidney disease, diabetes insipidus, obesity, depression/bipolar, anxiety, and a history of substance abuse. *Id.* The ALJ found that Schmittling did not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[1]Schmittling previously filed an application for benefits, which was denied on February 29, 2012. (Tr. 79-88.)

the listed impairments. (Tr. 18.)

As to Schmittling's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), in that he can lift and carry up to 50 pounds occasionally and lift or carry up to 25 pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant should never climb ladders, ropes, and scaffolds, work at unprotected heights, or with moving mechanical parts. The claimant can perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions with only occasional workplace changes. The claimant can have occasional interaction with supervisors, coworkers, and the general public.

(Tr. 21.)

The ALJ found that Schmittling's allegations regarding the extent of his limitations were not entirely credible. (Tr. 25.) In determining Schmittling's RFC, the ALJ indicated that he was assigning "partial weight" to the opinions of treating psychiatrist Sameer Arain, M.D., and nurse practitioner Olivia Jones. (Tr. 24-25.)

The ALJ further found that Schmittling was unable to perform past relevant work, but was capable of performing other jobs existing in the national economy, such as linen room attendant, dishwasher, and hand packager. (Tr. 25-26.) The ALJ therefore concluded that Schmittling was not under a disability, as defined in the Social Security Act, at any time from March 1, 2012, the alleged onset date, through December 31, 2014, the date last insured. (Tr. 27.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on September 5, 2013, the claimant was not disabled under sections 216(i) and 223(d) of the

Social Security Act through December 31, 2014, the date last insured.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is

> based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security

Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless

of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the

national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the

appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV. Discussion

At issue in Schmittling's sole claim is the following statement of the ALJ contained in his opinion:

> On April 29, 2014, the claimant's representative, Allsup, informed the claimant that it planned to no longer represent him at his disability hearing because the claimant was 'stable' (Exhibit B7F/4). While this decision is a non-medical assessment, it underscores that the claimant's symptoms had improved and that counters his argument that his symptoms are disabling.

(Tr. 24.)

Schmittling argues that the ALJ's finding regarding Allsup's[2] rationale for withdrawing was taken from statements Schmittling made to his counselor, and the accuracy of the statements is unknown. He contends that the ALJ should not have considered those statements of fact in denying his claim. Schmittling further argues that "proper evaluation of this information could have impacted the ALJ's credibility assessment of Plaintiff, as well as changed the ALJ's opinion of whether Plaintiff's symptoms had improved." (Doc. 23 at 13.)

Schmittling's argument lacks merit. First, the Social Security Act provides that the evidentiary rules do not apply in Social Security disability proceedings. *See* 42 U.S.C. § 405(b) ("Evidence may be received at any hearing before the Commissioner of Social Security even though inadmissible under rules of evidence applicable to court procedure."); *see also Passmore v. Astrue,* 533 F.3d 658, 663-64 (8th Cir. 2008) ("Social security disability hearings are non-adversarial proceedings and therefore do not require full courtroom procedures.") In fact, the

---

[2]Allsup is a non-attorney representative. (Tr. 246.)

United States Supreme Court has held that, under the Social Security Act, hearsay is "admissible up to the point of relevancy." *Richardson v. Perales*, 402 U.S. 389, 410 (1971). Thus, the ALJ was not precluded from considering hearsay statements in evaluating Schmittling's claims.

Second, Schmittling has not shown that the statement at issue was factually inaccurate. The statement was taken from the April 29, 2014 treatment notes of counselor Chelsea Meyer, MA, LPC. (Tr. 24, 451.) Schmittling requested an appointment on that date to discuss his disability claim. (Tr. 451.) Ms. Meyer stated that Schmittling reported that:

> he was informed by ALLSUP that they would not be representing him b/c he was 'stable.' Clt agreed to f/u w/resource provided by ALLSUP to have representation at disability hearing in June. Clt requested to keep direct apt w/OPC in the next month to provide continued support for disability claim.

*Id.* Ms. Meyer's treatment notes from April 25, 2014, and May 8, 2014, reveal that Schmittling made similar statements on these dates. (Tr. 453, 450.) For example, in April 2014, Schmittling reported that "he was informed by a party representing him for this disability claim that they will not be attending any further court hearings with client after receiving provider's diagnosis information." (Tr. 453.) On May 8, 2014, Schmittling "expressed his frustration towards ALLSUP for dropping him 1 month before his scheduled disability hearing." (Tr. 450.) The ALJ did not err in considering Schmittling's own statements made to medical providers.

Although it is true that Allsup's motivations for terminating Schmittling as a client cannot be confirmed, the most recent medical evidence from that period supports that Schmittling's condition was stable at that time. Schmittling saw treating psychiatrist Dr. Arain on January 16, 2014, at which time he reported feeling "better/good," and had no complaints. (Tr. 490.) Schmittling indicated that he was sleeping well, reported no manic behaviors, denied auditory or visual hallucinations, and displayed no evidence of delusions or paranoid thoughts. *Id.* Upon examination, Schmittling's behavior was appropriate, he was cooperative, his fund of knowledge

was adequate, his attention and concentration were within normal limits, his speech was normal, he had a full affect, and his thought process was intact. (Tr. 491-92.) Schmittling's grooming, eye contact, judgment, and insight were described as "fair." *Id.* Dr. Arain diagnosed Schmittling with bipolar I disorder, alcohol dependence, and cannabis abuse, with a GAF score of 60.[3] (Tr. 492.) Dr. Arain checked a box indicating Schmittling's condition was "stable." (Tr. 495.) As such, Schmittling has not shown that his statement to Ms. Meyer was factually incorrect, either as to his representative's motivation for withdrawing or with regard to his condition being stable at that time.

Further, the ALJ did not rely on Schmittling's statement to Ms. Meyer in determining whether Schmittling was disabled. As an initial matter, the Court notes that Schmittling's insured status is relevant in this case. Schmittling alleged an onset of disability date of March 1, 2012, and his insured status expired on December 31, 2014. To be entitled to benefits under Title II, Schmittling must demonstrate he was disabled prior to December 31, 2014. *See* 20 C.F.R. § 404.130. Thus, the period under consideration in this case is from March 1, 2012, through December 31, 2014.

With regard to Schmittling's mental impairments, the ALJ stated that the record does not support that they emerged or worsened as of the alleged onset of disability date. (Tr. 23.) He noted that Schmittling reported in his Disability Report that he was diagnosed with manic depression, bipolar disorder, and anxiety in the 1980s. (Tr. 23, 252.) The ALJ stated that, since

---

[3] A GAF score of 51 to 60 denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV–TR*").

then, Schmittling has been able to work at a number of jobs despite these impairments and there was no indication in his medical records that he suffered an exacerbation during the relevant period. (Tr. 23, 248.) When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. *See Dixon v. Sullivan,* 905 F.2d 237, 238 (8th Cir. 1990); *see also Van Vickle v. Astrue,* 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years.").

The ALJ next discussed Dr. Arain's treatment notes. (Tr. 23-24.) He stated that on Schmittling's February 22, 2012 visit, right before his alleged onset of disability, Dr. Arain observed no significant mental health deficits. (Tr. 23, 421.) The ALJ noted that, following an appointment on March 20, 2012, after Schmittling's alleged onset date, Dr. Arain noted the same findings as the previous visit. (Tr. 23, 419.) Specifically, Dr. Arain found on examination appropriate behavior, normal speech and motor activity, a reactive affect, linear and logical thought process, and fair insight and judgment. (Tr. 23, 419.) He stated that, on subsequent visits, Schmittling reported no significant mental health complaints and instead indicated that he was sleeping well and had no symptoms. (Tr. 417, 415, 413, 411, 409, 407, 403.) Schmittling reported feeling "better/good/stable" in February 2013, July 2013, September 2013, and January 2014. (Tr. 399, 389, 377, 328.) Dr. Arain continued to note few abnormalities on examination and, at Schmittling's January 2014 visit, assessed a GAF score of 60, consistent with only moderate limitations. (Tr. 24, 330.) One week later, Dr. Arain authored a letter in which he stated Schmittling's symptoms "have been in partial remission with his medications." (Tr. 447.) He further stated that Schmittling "may have difficulty working [a] full-time job on a sustained basis, dealing with work related stress, behaving in an emotionally stable manner, [and]

demonstrating reliability," and that his impairment "may cause [him] to be absent from work." *Id.* He recommended vocational rehabilitation and individual counseling. *Id.* The ALJ discussed Dr. Arain's statement and indicated he was assigning "partial weight" to his opinions regarding Schmittling's work-related limitations, noting that they were speculative and inconsistent with the record. (Tr. 24.)

As to Schmittling's physical impairments, the ALJ acknowledged that Schmittling has been diagnosed with diabetes, but noted that the medical records do not document recurrent diabetic ketoacidosis or any history of diabetic coma, nor do they show any persistent common complications such as weight loss, deep ulcers, end-organ damage, neuropathy, retinopathy, or peripheral vascular disease. (Tr. 22.) This finding is supported by the record. (Tr. 309-27, 517-30.) The ALJ also discussed Schmittling's kidney disease. (Tr. 22.) He stated that Gary Singer, M.D., at Midwest Nephrology Associates, Inc. treats Schmittling for his kidney impairment, and did not indicate substantial limitations resulting from this impairment. *Id.* For example, the ALJ noted that Schmittling complained of occasional dizziness, fatigue, and dysuria; but Dr. Singer also found he was in no apparent distress. (Tr. 22, 321-26.)

The ALJ concluded that Schmittling had the RFC to perform medium work, with the following additional limitations:

> The claimant should never climb ladders, ropes, and scaffolds, work at unprotected heights, or with moving mechanical parts. The claimant can perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions with only occasional workplace changes. The claimant can have occasional interaction with supervisors, coworkers, and the general public.

(Tr. 21.)

Schmittling does not specifically challenge the ALJ's RFC determination. Nonetheless, the undersigned finds that substantial evidence supports the ALJ's decision that, although

Schmittling had significant limitations resulting from his physical and mental impairments, he simply did not meet his burden to prove a disabling RFC. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("'[T]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five [of the sequential evaluation process].'") (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). The medical evidence discussed above revealing few abnormalities on examination is supportive of this determination. Notably, Dr. Arain recommended that Schmittling pursue vocational rehabilitation, suggesting Schmittling's mental impairments did not preclude all work activity.

The hypothetical question the ALJ posed to the vocational expert was based on the RFC formulated by the ALJ, which accounted for all of Schmittling's limitations. Consequently, the hypothetical question posed to the ALJ was proper. *See Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting *Lacroix v. Barnhart,* 465 F.3d 881, 889 (8th Cir. 2006)).

In sum, the ALJ did not err in considering Schmittling's own statements to Ms. Meyer that his representative withdrew because his condition was stable. This was but one of many factors the ALJ considered in finding Schmittling was not disabled during the relevant period. Further, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently." *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

Accordingly, Judgment will be entered separately in favor of the Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of March, 2018.